UNION NAVAL STORES CO. v. WIRT ADAMS, STATE REVENUE
AGENT.

[61 South. 419.]

TAXATION. *Property subject. Money employed in business. Code* 1906,
*section* 4266.

Under Code 1906, section 4266 so providing, a foreign corporation
which has its principal executive offices in another state and
purchases a turpentine lease of lands within this state and estab-
lishes a supply store or commissary in this state, from which it
furnished supplies to customers and at which it received turpentine
and resin, though its general contracts are made in another state
where its books are kept, had "money employed in business" in
this state and was subject to taxation to the value of said lease.

APPEAL from the circuit court of Harrison county
HON. GEO. S. DODDS, Special Judge.

Suit by Wirt Adams, state revenue agent, against the
Union Naval Stores Company. From a judgment for
plaintiff, defendant appeals.

The facts are fully stated in the opinion of the court.

*Ford, White & Ford, W. J. Gex* and *R. W. Stoutz,* for
appellant.

Doubtless the attempt will be made to sustain the as-
sessment under section 4266 of the Mississippi Code,
which reads as follows:

"Sec. 4266. Assessment of Money Loaned, etc. Every
person, resident or nonresident, whether corporate or oth-
erwise, and the agent of such nonresidents, having
money loaned at interest in this state, or employed in the
purchase or discount of bonds, notes, bills, checks or other
securities for money, or employed in any kind of trade or
business, shall be taxed for the same in the county in
which such person may reside or have a place of business,

or be temporarily located at the time of the assessment; and if any such person fail or refuse to give in such money or money employed in any kind of trade or business, shall be taxed for the same in the county in which such person may reside or have a place of business, or be temporarily located at the time of the assessment; and if any such person fail or refuse to give in such money on oath, or if the assessor have cause to believe that such person has not rendered a true account of all such money, he shall assess to the person such amount as he shall have reason to believe correct, according to the best information he can procure; and he shall forward to the party or his agent, in writing, a notification of the assessment having been made. And the assessor is authorized to address written interrogatories to any agent or any nonresident, or to any other such person, for the purpose of obtaining such information, and to require written answers thereof on oath, which oath the assessor is authorized to administer; and if any person being so interrogated, shall refuse to answer the interrogatories on oath within a reasonable time, he shall be liable to pay the sum of five hundred dollars, to be recovered by action in the name of the county, for the use of the county; and it shall be the duty of the assessor to cause such suit to be brought.''

Under this same section this court held nonresident mortgages not locally taxable. The opinion is very long, and briefs set out in full—briefs of very great ability. *Adams* v. *Mfg. Co.*, 82 Miss 263, 34 So. 484.

The opinion of former Chief Justice GEORGE, 34 So. 524, quoting from the United States Supreme Court, goes to the foundation of the question by saying:

'''The power of taxation, however vast in its character and searching in its extent, is necessarily limited to subjects within the jurisdiction of the state. These subjects are persons, property and business.''

This is not a personal, per capita or head tax, nor is it a tax on business or franchise. If anything, it is a property tax only, and must be tested that way.

This is clearly not a franchise tax, for no franchises are being exercised in this state; and the franchise to be a corporation was not conferred by this state, and cannot be taxed herein. Authorities *supra.*

And the statute includes residents and nonresidents, corporations and individuals, so that no franchise was in contemplation. Nor is it an occupation tax, because occupations are elsewhere taxed by license taxes. This statute makes an attempt to tax property as such. Money is property as much as is real estate.

It is not necesary to claim that section 4266 is unconstitutional and void as to everybody and under all circumstances. We go no further than to contend that, as applied to these parties, corporate and individuals, and their holdings of turpentine leases, which are nontaxable, the assessments here made, as claimed to be based on section 4266, are unconstitutional.

Upon the hypothesis that the money invested in these nontaxable turpentine leases is money ''employed in any kind of trade or business,'' the taxation of them against one ''in any kind of trade or business'' and nontaxation of the same investments be one not ''in any kind of trade or business'' is palpable discrimination. The defendant, Harrison Naval Stores Company, is engaged in the turpentine manufacturing business in Mississippi; the Union Naval Stores Company is not so engaged in this state. Defendant Jones is engaged in business, and other individuals owning such leases are not. Shall the one be taxed and the other exempted when both are entitled to the equal protection of the law? Suppose, again, that all these leases had been purchased by Mr. Jones, a nonresident individual and retired capitalist, who had quit ''any kind of trade or business,'' and merely bought as independent, casual speculations, thousands of acres of timber and turpentine rights. Clearly, he is not taxable on turpentine leases under this section. Are not these parties entitled to the equal protection of the law with this retired speculator-capitalist?

There is a rational interpretation that may be put upon this statute to save it from unconstitutionality, but it will not apply to or support these assessments. The rational interpretation is in harmony with similar statutes in other states. In such states the tax is usually upon the "capital invested or employed within the state," but it is uniformly interpreted as being upon the investment itself—that is, the property bought and owned—rather than upon the amount expended for such investments.

The amount expended, or a large part of it, may have been squandered, so that the investment is worth much less than it cost; or it may have been purchased property rapidly enhancing in value. In either case the cost price, the amount invested, is no criterion of value, and is out of harmony with a constitutional requirement of an *ad valorem* assessment on a present value, not past or future value. The present value of the investment in its new form—the property required with the money invested—is the only chiterion accepted. All the authorities base the assessment on the property and its assessed value, and they consider it, and uphold it, as a tax on the property itself. With equal uniformity the property itself determines its taxability, and when capital is invested in nontaxable property, such "investment" is held to be nontaxable, of course.

"When the tax is really laid upon the franchise of the corporation, although measured by the amount of its capital stock, the manner in which the capital is invested is not material; but if the tax is really upon the property, or assets of the corporation, as represented by its capital, allowance must be made for such portion of the capital as is invested in public securities of other nontaxable property." 37 Cyc. 820; *Chicago* v. *Lunt,* 52 Ill. 414; *Whitney* v. *Madison,* 23 Ind. 331; *G. A. S. Bk.* v. *Burlingtoon,* 54 Ia. 609, 7 N. W. 105; *State* v. *Rogers,* 79 Mo. 283; *People* v. *Barker,* 154 N. Y. 128, 47 N. E. 973; *N. Y.* v. *N. Y. Tax. Co.,* 2 Wall 200, 17 L. E. N. 793.

A tax assessed on the capital stock of a corporation is a tax on the property of which such capital is composed.'' *Whitney* v. *Madison,* 23 Ind. 331, 336.

For the purpose of such a statute the amount of capital employed in the state is measured by the total value of the property within the state owned by the corporation, and used by it in the transaction of its ordinary business. *People* v. *Wemple,* 150 N. Y. 46, 44 N. E. 878; *People* v. *Wemple,* 133 N. Y. 323, 31 N. E. 238. As distinguished from a mere independent investment. *People* v. *Wemple,* 150 N. Y. 46, 44 N. E. 787.

The money invested by the Union Naval Stores Company in leases for turpentine which it does not exercise and only sells again as an investment, and which, if and when operated are always worked by other parties, is not capital employed within the state so as to be subject to taxation.

The highest court in New York said: ''Bartlett, J.: The relator is a foreign corporation carrying on a portion of its business in this state. The comptroller of the state of New York imposes a tax on the corporation for the year ending November 1, 1890, of two thousand five hundred and sixty nine dollars and ninety nine cents, under chapter 542, Laws 1880, and the acts amendatory thereof. The general term of the third department ordered a reduction of the tax to one thousand one hundred and sixty-three dollars and seventy four cents, and the comptroller appeals from that order.

''The facts are undisputed. The report of the relator to the comptroller fixes the amount of capital stock employed in this state at three hundred and seventy two thousand, two hundred and seventy-nine dollars and ten cents. The relator also advised the comptroller that about three hundred and seventy two thousand, three hundred and seventy nine dollars and ten cents. The relator also advises the comptroller that about nine hundred thousand dollars of its surplus earnings were

invested in real estate in the city of New York then under lease and not occupied by it, but the intention was to erect a new building when the existing leases expired and to use a small portion of it for the offices of the company and lease the remainder to tenants. The comptroller insists that the amount so invested in real estate must be added to the capital stock reported as employed in this state, and the tax computed on the total sum, while the relator contends that the real estate constitutes no part of the capital stock employed within the state. We are of the opinion that the amount represented by the real estate was no portion of the capital stock employed within this state, even if the nine hundred thousand dollars was a part of the capital stock of the company. It was an independent investment, and was in no sense employed within this state in the transaction of the ordinary business of the relator. *People* v. *Wemple,* 131 N. Y. 64, 29 N. E. 1002. If at any time the whole or any portion of this real estate should be used by the relator in carrying on its business in this state a different question would be presented, which need not now be considered." *People* v. *Wemple,* 44 N. E. 787, 150 N. Y. 46.

This assessment cannot be justified upon the theory that the company had other property, such as a stock of merchandise, etc., as indicated by the statement of facts. Such other property was assessed as such and the taxes paid. Even if the record is silent with reference thereto, the law presumes it. If such assessment was not made, let it be made in a proper way. The proper way to assess a stock of groceries is to assess it as a stock of groceries, and not as turpentine leases.

Section 4270 calls for an assessment on a capital employed in merchandise and capital employed in manufacturing. Capital employed in turpentine leases is neither one. The leases are sold to other concerns which manufacture, but the owner of the lease does not manufacture. A lease is not merchandise. Under the law a

local resident person would not have to pay tax on a turpentine lease. Why should a nonresident person? Why should a nonresident corporation, if such taxation has not been exacted as the price of admission to the state at all?

*Harris & Potter* and *S. W. Davis*, for appellee.

Counsel insist that because the leases are owned by nonresident corporations the taxes sought to be assessed in these cases on the money employed in the business in Mississippi is not taxable, and cite as authority the case of *Adams* v. *Mortgage Co.*, 82 Miss. 263. The only point decided in that case was that the solvent credits or money sought to be taxed in that case in Mississippi could not be taxed because the owners of the same were not doing business in the state of Mississippi and did not have an agent in the state of Mississippi, or place of business, but that the whole transaction took place outside of the state of Mississippi, and, therefore, the property could not be reached.

It is only necessary for the court to read the syllabus of that case to see what point was decided.

In that case, however, the court expressly reaffirmed the case of *Jahier* v. *Rascoe,* 62 Miss. 699, and the case of *State* v. *Smith,* 68 Miss. 79.

In *Jahier* v. *Rascoe,* 62 Miss. 699, the court said: "But where the owner himself so deals with his estate as to incorporate it with the mass of property of the estate, then, though in the transmutations which it undergoes it is sometimes converted into choses in action and sometimes into tangible personalty or realty, it continues at all times 'situate in the state' within the meaning of our statute. Our view is, that whether personal property is situated in this state or not is to be determined by reference to the intent of the owner, which intent is to be discovered by all the surrounding circumstances; that the statute does not, in other cases than those in which the owner has so dealt with the property as to locate it here, abrogate the rule

104 Miss. 20

that choses in action have their situs at the domicile of the owner; but that wherever it appears that the debt arose as an incident to a business conducted in this state, whether that business be that of lending money, buying and selling property, or in any other manner, it is situated in this state and is governed by our laws."

In the case of *Adams* v. *Mortgage Co.,* 82 Miss. 397, this court said that it was the purpose of the legislature, in bringing forward the section above referred to, to perpetuate the construction given thereto in the Johnson case and in the Smith case.

We deem it unnecessary to prolong this discussion. A most casual examination of our revenue statutes makes it clear that it is the purpose of the legislature to subject all property to its just burden of taxation, except such as is specifically exempted. As to that property there is an emphatic declaration that it and no other shall be exempt from taxation. And to make the legislative purpose clearer there is a separate provision in secton 4256 subjecting money loaned, solvent credits, notes, bills and securities of every kind to taxation and specifically subjecting to taxation money "employed in any kind of trade or business."

Our revenue statutes could not be more comprehensive. There is nothing in imposing this tax which savored of discrimination. On the contrary, if this money employed in the turpentine business is exempted from taxation, it would be discriminating in favor of appellants against all other persons who had money employed in any other business. If their contention is correct, a man could employ millions of dollars in buying and selling turpentine leases, and go into the business and claim that his money was absolutely exempt, because he was dealing in turpentine leases, and, therefore, was not covered by the broad and sweeping statute which subjects money employed "in every kind of trade or business" to taxation.

Argued orally by *W. J. Gex* and *R. W. Stout,* for appellant and *J. B. Harris,* for appellee.

Reed, J., delivered the opinion of the court.

The only difference between this case and that of *Harrison Naval Stores Co. v. Wirt Adams, Revenue Agent,* 61 South. 417, decided by us today, is that in this case a question is presented as to whether appellant is shown to be so engaged in business in Harrison county as to render it liable to assessment for money invested and employed in the turpentine business.

The agreed statement of facts shows that appellant, a foreign corporation, with its principal executive offices in the cities of Mobile, Ala., and New Orleans, La., was, when it purchased the turpentine lease and during 1908, the year for which it is assessed, a dealer in naval stores, and engaged in buying and selling turpentine and rosin. On December 15, 1906, the company established at Gulfport, in Harrison county, a supply store or commissary, from which it furnished supplies to its customers, and at which it received turpentine and rosin. Its general contracts are made at the offices in New Orleans and Mobile, and its books kept in New Orleans. It has continued to maintain the Gulfport office and commissary, where business is carried on, since its establishment. The turpentine lease purchased September 7, 1907, and which is the evidence of the assessment, was on February 1, 1910, sold and transferred to one of its customers.

We think the record discloses facts which lead to the conclusion that appellant was engaged in business in Harrison county when the assessment was made. A transaction in this business was the purchase and sale of the turpentine lease which is the basis of the back-tax assessment. This lease was in the ownership of appellant during the time for which it was assessed, the fiscal year of 1908, and showed beyond question that it had money in its business in Harrison county to the value thereof, the sum of four hundred dollars, the amount of the assessment.

All other questions in this case are controlled by the decision in the case of *Harrison Naval Stores Co. v. Wirt*

*Adams, State Revenue Agent,* and we specially refer to the opinion therein.

*Affirmed.*