HARRISON NAVAL STORES CO. *v.* WIRT ADAMS, REVENUE AGENT.

[61 South. 417]

1. TAXATION. *Property subject. Money employed in business. Code 1906, sections* 4266-4740.

Under Code 1906, section 4266, so providing, every person having money employed in business in this state shall be taxable therefor in the county in which he may reside or have his place of business and under section 4740 providing that the revenue agent shall assess property which has escaped assessment, a foreign corporation which leases land for turpentine purposes, and which owned a number of stills and actually engaged in manufacturing turpentine and rosin from the tree on the leased land, and had its principal office in this state, was engaged in business in the state and was subject to assessment of the money invested and employed in such turpentine business, although the fee in the land was in the state university and not subject to taxation, and the trees from which the turpentine was extracted belonged to another who paid taxes upon the same.

2. SAME.

In the assessment of such money employed in business the lease held by the corporation should only be treated as evidence of the amounts which such foreign corporation has in this state employed in its turpentine business.

Appeal from the circuit court of Harrison county.

Hon. Geo. S. Dodds, Special Judge.

Suit by Wirt Adams, state revenue agent, against the Harrison Naval Stores Company. From a judgment for plaintiff, defendant appeals.

The facts are fully stated in the opinion of the court.

*Ford, White & Ford, W. J. Gex* and *R. W. Stoutz,* for appellant.

Numerous objections filed to the assessments raise the various points discussed in this brief. Most of the points discussed apply to all the cases. It is easier and more orderly, and preventive of repetition in argument, to discuss them all in order, the application to the separate cases being simple and easy. Case No. — —, in which the circuit court sustained our contention, is distinguishable from the other cases in that the Union Naval Stores Company, the holder of the lease, attempted to be assessed in that case for the fiscal year 1906, was, as shown by the agreed state of facts, in no sense domesticated or doing business in Mississippi at that time so as to give its intangible property a situs for taxation in Mississippi. A turpentine lease owned by a foreign corporation, if such a property right as to be taxable at all, is of that character falling within the maxim, *"mobilia sequuntur personam,"* and having no situs for assessment for taxation at any place other than the domicile of the owner. The case of *Adams* v. *Colonial Mortgage Co.,* 83 Miss. 263, is, we submit, decisive of this particular case, and the judgment of the circuit court in that case should be affirmed.

These assessments are an ingenious attempt at double taxation and an attempted evasion of the plain decision of this court and other courts that turpentine leases are not separately taxable, because the owner of the property leased has already been assessed with and paid taxes on the entire property leased. Those authorities are hereinafter set out.

The chief appeal made by counsel for the revenue agent at the trial below as the reason why these assessments should be sustained was that a considerable element of wealth in the state was not paying taxes. While the argument is ingenious it is untrue in fact for one reason and not a good legal argument for another reason. In the first place it ignores the fact which is plainly shown by the record, that the owner of the land has already paid taxes on the entire value of the land including every use to which the land might be put embracing turpentine operations and all other operations. In the second place, it is no legal argument to say that some wealth escapes taxation against the owner. The courts recognize the principle that much wealth very properly escapes taxation. Everything not within the spirit and letter of the taxation scheme necessarily escapes. A lawyer's most valuable asset—his legal learning—is certainly an important item of his wealth, but it is not taxable. The good will of a mercantile business may be highly valuable, especially when location and reputation of the goods are factors of value, but such good will is not taxable. In some states, like Alabama at the present time, a liquor license may be more valuable than the cost of it. Many more applications are filed than are permitted to be granted by law; hence, every license granted under the present system of limited numbers is valuable enough to command a premium. This is the wealth paid for with money and used in money-making and is not taxable. Some of the so-called baseball "franchises," being the privilege of operating a "big-league" club in a large city, are worth hundreds of thousands of dollars, yet they are not taxable, although their exercise brings tremendous profits. In many states corporate franchises are not taxable. In the state of Mississippi timber may be taxed as standing timber on the first of February, and before the first of the next February it will be cut down and manufactured into lumber and made tenfold more val-

uable. This increase amounts to millions of dollars each year, and is not taxable. The entire cotton crop of the state of Mississippi uniformly escapes taxation. The crop is planted after the first of February and harvested before the first of next February. Probably ninety-nine per cent. of it comes into being and passes out of the state before the beginning of the next fiscal year. Only one per cent., or other small fraction, remaining in factorage warehouses, can be found for taxation. So there is nothing in that argument. Undoubtedly it is a proper legislative aim to tax all property as nearly as might be in the light of the desirability for certainty and a fixed time for assessment. No legislative wisdom ever accomplished the task of bringing all property under assessment for taxation without large omissions. It is also a settled principle that it is legislative wisdom to tax property but once. While double taxation may not be always or necessarily unconstitutional, the principle of double taxation is abhorrent and opposed to that fairness and uniformity which are the ultimate object of most taxation systems.

The views of this court on this important question are aptly expressed in the following language in the opinion of the court in the case of *State* v. *Simmons,* 70 Miss. 497:

"It seems to be conceded by counsel for appellant that the legislative purpose is and has been to tax both the capital stock of the company and also its real and personal property, and his argument is addressed to the right of the state to tax not only the property of the corporation and its stock, but, in addition thereto, to tax the shares of the stock to the stockholder. Our examination of the statutes has held to a conclusion which renders unnecessary a consideration of the question of the existence of this power. Whether the power does or does not exist, the rule of construction is universal that no such purpose is to be attributed to the state; and, to prevent such results, the courts will, as far as possible, without doing vio-

lence to the words of the law, restrain such provisions of statutes as apparently authorize a double burden to be laid upon the same property or persons. Keeping constantly in view the justice of equality of taxation, and assuming the legislative will to be that no other result shall be reached by the plan it provides, the courts have uniformly construed revenue acts, unless unequivocally and clearly expressing a different purpose, as intended to levy a single tax only upon the same property, even though the words of the law would ordinarily and naturally bear a broader and more general meaning.''

*Harris & Potter* and *S. W. Davis,* for appellee.

The claim of the revenue agent is that the money employed by the Harrison Naval Stores Company in the turpentine business was subject to taxation, and he bases his right to subject it to taxation, on section 4266, Code of Mississippi of 1906, which is as follows:

''Every person, resident or nonresident, whether corporate or otherwise, and the agent of such nonresident, having money loaned at interest in this state, or employed in the purchase or discount of bonds, notes, bills, checks, or other securities for money, or employed in any kind of trade or business, shall be taxable for the same in the county in which such person may reside, or have a place of business, or be temporarily located at the time of the assessments,'' etc.

The question therefore, for this court to determine, is whether a person engaged in the business of manufacturing turpentine and rosin is engaged ''in any kind of trade or business,'' and, if so, whether money employed in the purchase of turpentine leases for the purpose of carrying on that business is money ''employed in any kind of trade or business,'' and, therefore, subject to taxation under the section of the Code above referred to.

The court will bear in mind that the entire discussion of the brief of counsel representing the appellants is upon

the idea that the revenue agent was attempting to assess turpentine leases *per se* (this was done in one of the cases to be referred to later), and there devoted a good deal of time to citing authorities on the point that leases are not taxable.

In the case under immediate discussion, and in three others of the cases, the leases are referred to merely as evidence of the fact that the Naval Stores Company had that much money employed in the business which had escaped taxation.

The section of the Code of 1906, 4266, under which the revenue agent is proceeding, is section 3757 of the Code of 1892 which is an exact reproduction of section 497 of the Code of 1880, which is substantially article 23, page 76 of the Code of 1857.

This statute has received judicial interpretation and construction by this court in the following cases: *Jahier* v. *Rascoe,* 62 Miss. 699; *State* v. *Smith,* 68 Miss. 79; *Adams, Revenue Agent,* v. *Mortgage Co.;* 82 Miss. 363, 392.

In all of these cases the property of nonresidents was sought to be subjected to taxation, and it is by virtue of this statute that solvent credits of all kinds and capital of money employed in business of all kinds have been for years subjected to taxation in this state. The statute is broad and sweeping in its provisions and applies broadly to money "employed in any kind of trade or business," and, as above stated, the contention of the revenue agent here is that money employed in the turpentine business is as much subject to taxation as money employed in any other business, whether that money be invested in notes, bonds, mortgages, or other securities, or any kind of personal property, including turpentine leases.

There seems to be no question on the part of counsel representing appellants that this is money employed in the business, but their contention is that as it was used in the purchase of turpentine leases, it is, consequently, not

subject to taxation, and they rely mainly on the case of *Hancock County* v. *Imperial Naval Stores Co.,* 93 Miss., 822.

We insist, on the other hand, that that case is not applicable because in that case the attempt was to subject certain turpentine leases to taxation as real estate.

In the conclusion of that opinion this court said:

"Confining ourselves strictly to the precise point presented for adjudication by this record, which is, merely and simply, whether this instrument passes any interest in the land as land, and therefore assessable as land, we say that it does not."

We, therefore, insist that the case is far from being decisive of the question here presented, the question here being whether money employed by a concern engaged in the turpentine business in turpentine leases as a part of their business, as necessary to carry on their business, is subject to taxation as money invested in "any kind of trade or business."

The necessary conclusion of the argument of counsel for the appellants would be that money of one engaged in the turpentine business, employed in the purchase of turpentine leases, becomes exempt from taxation.

The law specifically sets forth what property shall be exempt from taxation. The language of the statute, section 4251 of the Code of 1906, is as follows, "The following property and no other shall be exempt from taxation," and then specifies the property which shall be exempt.

Even should this be a proceeding to subject the lease as such to taxation, we see no reason why it should not be taxed as such. That it is property requires no argument to prove. It is subject to absolute ownership, it is a thing of value, it is vendable. In the very case under consideration the New Orleans Naval Stores Company, as shown by the statement of facts, purchased the lease from Dantzler, and the Harrison Naval Stores Company. Thus it was

passing from hand to hand as vendable personal property.

Holding that it was not taxable would be equivalent to holding that a man with money lying on deposit which is taxable as such, could, by the easy process of investing that money in a turpentine lease, escape taxation on the money. That although I am the owner of valuable property, vendable as such, my money invested in it is non-taxable. Hundreds of thousands of dollars could escape taxation by this easy process, and this must necessarily follow as a result of holding that money invested in a turpentine lease is not subject to taxation. We know of no warrant for such a conclusion.

It is insisted by counsel for appellant throughout, and it is the main contention, that because the owner of the land pays taxes on the land, the money used in the purchase of turpentine leases cannot be taxed, that it would be double taxation.

We would ask why the same reasoning would not apply to money invested in a mortgage on the very land in question. The fact that the owner of the land mortgaged pays taxes on the land to its full value does not exempt the money invested in the mortgage or the money loaned on the land from taxation.

What are we to say in the case of vendor's lien notes on lands sold? The purchaser pays the taxes on the land and the holder of the notes and lien pays taxes on the notes. See *Adams* v. *Kuykendall,* 83 Miss. 581.

We will take this further illustration: A borrows one thousand dollars from B on a piece of real estate; executes his note and the mortgage to secure it, but has the money thus borrowed on deposit on February 1st. The real estate pays a tax, the money on deposit in the bank arising from this real estate pays a tax, and the lender of the money pays a tax on his loan.

If the argument of counsel for appellants amounts to anything, the money arising from the loan on the real es-

tate should, at least, be exempt from taxation, because the real estate pays a tax, but we are sure this court would not entertain that proposition.

The case at bar in no sense presents a case of double taxation and presents no hardships.

The money employed in the turpentine business evidenced by leases was subject to taxation before being so employed, and is not the money of the landowner or of the lessor. The land is none the less subject to taxation and the taxes are paid by different parties.

But why talk about double taxation? Appellants are certainly not being doubly taxed. What they are endeavoring to do is to escape being taxed at all. They are claiming that the money which they have employed in the turpentine business, which is sought to be reached here, sould not be taxed at all. Certainly it is not shown that any additional burden is imposed upon the landowner, and we don't see where the question of double taxation arises, or where any hardship is imposed upon anyone. See 37 Cyc. 753.

The insistence of the revenue agent is a clear-cut proposition. It is this: The Harrison Naval Stores Company, as shown by the statement of facts, is engaged in the turpentine business in Harrison county, Mississippi, and that as part of that business it has employed money in the purchase of turpentine leases which has escaped taxation. The court must determine whether this money is subject to taxation.

As we have shown by reference to the statute, it is the policy of our law to subject property of every description to taxation except such as is specifically exempt. That it is the policy of our law to subject to taxation all money "employed in any kind of trade or business," and if the manufacture of turpentine and rosin is "any kind of trade or business," then the money sought to be reached here is necessarily money employed in that business. The very purpose for which the money is employed is to carry

on the turpentine business, and that it is a business we take it there can be no doubt.

We do not think we are driven to the necessity of undertaking to argue to this court that the manufacture of turpentine and rosin is a business. It is not only a business, but in Mississippi is a very great business. It is a very large and extensive business in which hundreds of thousands of dollars are employed, and in which large fortunes have been and are being made.

A necessary adjunct to that business is the turpentine lease. The money used to obtain it is just as much money employed in business as the money invested in the still, or in the barrels, or in the machinery, or in any of the other adjuncts of the business.

This court has held in the Hancock county case that the turpentine leases were not a part of the land or an interest in the land and could not be taxed as such. The whole effort in the Hancock county case was to treat the turpentine leases as an interest in the land as specifically pointed out by the court; the court held that they were not.

In the concluding paragraph of the brief of the attorney-general in the *Hancock County case,* 93 Miss. 825, it was insisted that if the leases were not taxable as an interest in the land, then they were personal property and therefore taxable, and relied upon the case of *Tunica County* v. *Tate,* 78 Miss. 294.

The court, 93 Miss. 832, declined to reverse the case on that ground for the express reason that on the face of the record the court was dealing with an assessment on the land roll as an interest in the land, and that the only question for decision was whether that particular judgment was correct.

It is insisted by counsel that very much property or things of value escaped taxation. He cites the legal learning of a lawyer, the good will of the mercantile business, franchises of a baseball league, etc. They may all be

true, but the insistence of the revenue agent is that in this case he is undertaking to assess for taxation money employed in the turpentining business which has escaped taxation in former years, under the express provision of the statute that money "'employed in any kind of trade or business'' shall be taxed, and that is the proposition with which we are dealing, and the only one with which this court is called upon to deal.

We agree with counsel for appellants that double taxation, while not necessarily unconstitutional, is not favored, but we insist that in this case this is in no sense double taxation because the tax sought to be imposed here is upon one species of property belonging to one party, while the tax upon the land is upon another species of property belonging to another party, the two things separate and distinct. It is no more double taxation than the instance which we have cited above could be treated as double taxation, and it is not so viewed in the eyes of the law, and it is not the policy of our law that large sums of money can be withdrawn and relieved of its due burden of taxation by the easy process of employing it in the turpentine business.

The brief of counsel for appellants is somewhat ingenious, but they are dodging the question. There is no doubt that the state has a right to tax money and it is taxed; and it has a right to provide that this money shall not escape taxation because employed in business, and it is, therefore, provided that money "employed in any kind of trade or business'' shall be subject to taxation. The money would be taxable if on hand or on deposit and the law follows it when withdrawn and employed in any kind of business and there taxes it and the taxpayer cannot complain, no additional burden is imposed upon him.

Argued orally by *W. J. Gex* and *R. W. Stoutz,* for appellant and *J. B. Harris,* for appellee.

REED, J., delivered the opinion of the court.

As authorized and directed by the statute (section 4740, Code of 1906), the state revenue agent gave notice in writing to the assessor of Harrison county to make the proper assessment by way of additional assessment on the roll in his hands, of certain personal property of the Harrison Naval Stores Company, appellant, which had escaped taxation during certain years by reason of not being assessed.

It is made the duty of the state revenue agent, in section 4740, whenever he discovers that any person, corporation, property, business, occupation, or calling has escaped taxation, by reason of not being assessed, to serve such notice upon the assessor when the rolls are in his hands. The assessor shall within ten days thereafter make the proper assessment and give notice to the person or corporation whose property is assessed. The board of supervisors, in assessments by the county assessor, is given the power to hear all objections to the assessment, and approve or disapprove the same, and from its action an appeal may be taken.

In compliance with the notice from the revenue agent, the assessor made the following assessment to appellant: "Additional Assessments of Money Invested or Employed in the Turpentine Business. By Harrison Naval Stores Co. in Harrison county, as shown by the deed records of said county, state of Mississippi as appears from the following turpentine leases in favor of Harrison N. S. Co. recorded in said county, by assessor of Harrison county, by order of Wirt Adams, state revenue agent." Following this, the assessment sets out information from the deed records showing the turpentine leases, their dates, terms, and so on.

Objections were made to the assessment, and the board of supervisors entered an order abating the same. From this order an appeal was taken to the circuit court, and the order of the board disallowing the assessment was set

aside, and the board directed to assess appellant for the fiscal years of 1907, 1908, 1909, and 1910. From this judgment of the circuit court the present appeal was taken.

There is an agreed statement of facts in the record, which shows that the Harrison Naval Stores Company is a Louisiana corporation. It was organized for the purpose of manufacturing turpentine and rosin, commonly called "naval stores." Since February 1, 1907, it has had its principal office at Biloxi, in Harrison county, Miss., where its books are kept and its principal business transacted. Since that date it has been actually engaged in manufacturing turpentine and rosin in Harrison county from crude gum taken from pine trees in that county, and since that date has owned six stills, located in different places in the county, for the purpose of carrying on its business. The company on December 5, 1906, purchased from the New Orleans Naval Stores Company a lease for turpentine purposes on 13,750 acres of land in Harrison county; the purchase price being $45,375. The fee in the land upon which is standing the timber used for the turpentine purposes is in the University of Mississippi, and not taxable. The timber thereon belongs to L. N. Dantzler Lumber Company, and has been assessed to the owners for taxes. The turpentine leases have not been assessed during the years named to the Harison Naval Stores Company, nor to anyone. The company has not been assessed in this state for the money paid for the lease, nor any part thereof.

It is provided in section 4266 of the Code of 1906 that "every person, resident or nonresident, whether corporate or otherwise, and the agent of such nonresident, having money loaned at interest in this state, or employed in the purchase or discount of bonds, notes, bills, checks or other securities for money or employed in any kind of trade or business shall be taxable for the same in the county in which such person may reside, or having a place of business, or be temporarily located at the time of the

assessment." In the printed list, which, in accordance with section 4270 of the Code of 1906, is to be furnished by the assessor to parties owning property in this state information is sought as to the amount of capital employed in merchandise or in manufacturing also the amount of money such person may have on hand, or on deposit, or loaned, subject to taxation, and as to all personal property not otherwise mentioned. It is certainly well known that it is the purpose of the state in its scheme for providing revenue to require all property, saving such as may be especially exempted, to be assessed for taxation and to bear its proper burden in raising the necessary funds for the expense of government.

The question in this case for our consideration is whether the assessment to appellant is of property in Harrison county owned by it, and which should be assessed for the payment of taxes. The assessment is not of real estate, but of personal property. It will be noted that the assessor put it upon his rolls as "additional assessments of money invested or employed in the turpentine business." He does not attempt to assess the turpentine leases by themselves. The leases are set out in the assessment only for the purpose of showing the amount of money employed by the company in its turpentine business.

Appellant contends that the assessment amounts to an assessment of the leases, and that it has been decided in the case of *Hancock County* v. *Imperial Naval Stores Co.,* 93 Miss. 822, 47 South. 177, 17 L. R. A. (N. S.) 693, 136 Am. St. Rep. 561, that such leases are not subject to taxation. We find upon examination that that case was quite different from this. It appears that the Naval Stores Company was assessed on its lease or license to take rosin from pine trees for turpentine purposes as if its rights therein were real estate. It was decided in that case that a license to enter upon land for a term and extract rosin from the pine trees thereon is not such an interest in the

land as to be taxable as real estate. WHITFIELD, C. J., in delivering the opinion of the court, said: "The crude rosin or product of the tree might itself be taxed as personal property when severed from the tree or the turpentine made fom such crude product itself be taxed as personal property; but the instrument conveys no interest in the land as land. Now the precise point presented for our determination is whether the right granted by this instrument was taxable as an interest in the land itself at fifty cents per acre. It was so assessed on the land roll it was dealt with by the court below in that view alone, and consequently the point made by the larned attorney-general, that if we should hold that the crude products are taxable as personal property then this judgment should not be reversed, under the principle announced in *Tunica County v. Tate,* 78 Miss. 294, 29 South, 74, is not tenable on the point presented by this record. It is true, as held in that case, 'that the law taxes the property, and is not to be defeated by its being put on one assessment roll rather than another;' but dealing, as we must on the face of this record, with an assessment on this right on the land assessment roll as an interest in the land, the only question for decision here is whether that particular judgment is correct. All the crude products obtained from these pine trees, or all the turpentine made from them, certainly should be assessed to the appellee, and taxes paid on them by the appellee, just as they would be paid on any similar personal property; 'but that is another story.'" In the conclusion of his opinion Judge WHITFIELD said: "Confining ourselves strictly to the precise point presented for adjudication by this record, which is, merely and simply, whether this instrument passes any interest in the land as land, and therefore assessable as land, we say that it does not."

It will be plainly seen that there was an attempt to assess on the land roll as real estate the turpentine lease held by the Imperial Naval Stores Company. In the pres-

ent case the purpose of the assessment is to collect from the appellant taxes on money employed in business. The assessment is of personal property, consisting of money. The leases only serve to inform the assessor of the amount of money used by appellant in its business. Surely it cannot be said that appellant is not engaged in business in Harrison county; the agreed statement of facts clearly shows this. It appears that the very purpose for which the company was organized is to manufacture naval stores, and that that purpose has been carried out by the manufacturing enterprise which it has conducted, with its principal office in the city of Biloxi, in Harrison county. The leases give the appellant the right to extract the crude gum from the pine trees, and then thereafter such product is manufactured in Harrison county into turpentine and rosin.

We notice in the opinion in the case of *Hancock* v. *Naval Stores Company, supra,* the taking of the gum from the trees and manufacturing it for commercial uses is referred to as the "turpentine business" and the opinion states that, wherever pine trees have been growing during the past many years, this turpentine business has been in operation. The appellant is therefore engaged in business in Harrison county. It has capital employed in that business. Such capital is properly situated in that county. It is such property as is liable for taxes. We see no reason whatever why appellant's property should be relieved of bearing its fair proportion of the expense of government. We believe that it should contribute to the support of the state government. Its value is, in a large measure, dependent upon the proper civil government of the state wherein it is located.

Appellant has no ground to complain of double taxation. It is not being doubly taxed; in fact, it has not been taxed at all for this property which it has in Harrison county. Appellant will escape taxation entirely, if it should be decided that its money employed in the turpen-

tine business in this state is not subject to taxation. We cannot see that any double taxation is imposed in this case upon anyone, or where any hardship will follow. Each person should be required to pay taxes on the property he owns. In this case appellant is only being asked for taxes on its own property. The property should be assessed for its true value. The leases should only be treated as evidences of the amounts which appellant has in this state employed in its turpentine business. Such amounts may vary from year to year. It is shown in the agreed statement of facts that the assessments are not for the same amount each year. They are made less year by year. This should be so, for the value of the products from the trees will gradually become reduced, and the money employed in business will be accordingly less.

It is right to require of appellant the payment of taxes on the money it has employed in its turpentine business in this state.

*Affirmed.*