JOHNSON STATE REVENUE AGENT v. HARRISON NAVAL
STORES CO.

[67 South. 147.]

MUNICIPAL CORPORATIONS. *Taxation. Property subject to.*
  Where the business, in which the money of a corporation is in-
  vested, is located in a city, and the evidence of the investment
  is kept at that place, the main office, such evidences of invest-
  ment are taxable in the city, although the subjects of the busi-
  ness or the things in which the money is invested, are outside of
  the city.

APPEAL from the circuit court of Harrison county.
HON. J. I. BALLENGER, Judge.

Suit between J. C. Johnson, State Revenue Agent, and
the Harrison Naval Stores Company. From a judgment
for defendant, plaintiff appeals.

The facts are fully stated in the opinion of the court.

*J. B. Harris* and *S. W. Davis,* for appellant.

On page 10 of the agreed statement of facts, upon
which this case is to be determined, it sets forth that
the Harrison Naval Stores Company is a nonresident
corporation, organized for the purpose of manufactur-
ing turpentine and rosin, commonly called "naval
stores;" that it owns certain stills located at various
places in Harrison county; that for the years for which
it is sought to be taxed, the appellee has owned and con-
trolled certain leases upon land for turpentine purposes,
authorizing the company to enter upon the land and to
extract crude turpentine from the pine trees growing
thereon, which, leases, licenses or contracts are in the
form of Exhibit "A" to the agreement; that the lands
were outside of the corporate limits of the town of
Biloxi, and that the value of the leases depreciated from
year to year. It will be seen by referring to page 13 of
the transcript, that in fixing the value of these leases
for the purpose of taxation, this depreciation is taken
into consideration. It is further agreed on page 11 that
the main office of the company is situated in the town
of Biloxi and was so situated during the years for which
the tax is sought to be collected, and that all of its leases

and contracts were kept in its main office in the town of Biloxi during all these years for which it is sought to impose the tax, and that neither the leases nor the money invested therein was given for municipal taxation for the year mentioned; but, the state and county back taxes on the same property were paid by virtue of the decision of this court in the case of *Harrison Naval* Stores Co. v. *State Revenue Agent*, reported in 61 So. 417, the question of municipal taxation not having been presented in that case.

It seems to us that the case is very simple. Section 4258, Code 1906, provides that every person shall be assessed in the county and in the municipality in which he resides at the time of the assessment and, that all personal property owned by any person in any county other than that of his residence, shall be assessed in the county in which it may be found on the 10th day of February of the current year.

Section 4259 provides that all banks and other companies and corporations shall be assessed in the county in which its principal office and place of transacting business is situated.

There is no attempt in this case to assess any other property than money invested in turpentine leases, which has escaped taxation. These leases are all located and held by the corporation in the town of Biloxi, where it in law resides. This court has held in the case above referred to, that these leases or the money invested in them is taxable. They are liable for state and county taxes, and, neither the court nor the legislature has any power to exempt them from municipal taxes. There could be no question in this case as to the *situs* for the purpose of taxation; that is distinctly fixed by the sections of the Code above referred to.

There is no purpose here to tax the land, nor the trees thereon, nor the stills, nor the crude turpentine and rosin. No question is presented here as to the location of these items for taxing purposes. The purpose here is to tax money invested in certain turpentine leases lo-

cated in the town of Biloxi, which has escaped taxation.

*W. J. Gex* and *Ford & White,* for appellee.

The assessment in this case is an effort to assess the appellee for municipal taxes under section 4266 of the Code, for money employed in any kind of trade, or business, by alleging that the money is invested in turpentine leases, which is simply one of a great many classes, or kinds, of property which is owned by persons engaged in the turpentine business.

While the decision of the supreme court in the case of *Harrison Naval Stores Company* v. *Adams,* 61, So. 417, is correct in principle, in so far as it holds that leases are personal property and liable to assessment and taxation for state and county taxes, in the county in which the leased lands are situated, yet the language of that opinion shows that the court was misled into believing that the leases themselves like promissory notes, bills of exchange, or other commercial paper, showed the amount of money that was invested, and that the evidence of the value of the leases were the leases themselves.

The court on the same day decided the case of *Jones* v. *Adams,* 61 So. 420, where the assessment was against Jones, a resident of Harrison county, for the value of a turpentine lease, under the item, or classification, of properties set forth in section 4270 of the Code for the "amount of all other personal property not otherwise mentioned."

The court in this Jones case, which was a distinct case, being tried at the same time as that of the *Harrison Naval Stores Company* v. *Revenue Agent, supra,* held that while the supreme court had held in *Hancock Naval Stores Company* v. *The Imperial Naval Stores Company,* 93 Miss. 822, that turpentine leases were not realty, that they were personal property, and liable to assessment as such under the head of "the amount of all other personal property not otherwise mentioned,"

for the reason that turpentine leases were not one of the eighteen different classes, or kinds of property enumerated in section 4270 of the Code, not being specifically enumerated and separated from other taxable property, these leases as personal property were properly classified by the Revenue Agent as falling under the head of "The amount of all other personal property not otherwise mentioned," in the statute.

Paragraph 4 of the agreed statement of facts in this case, especially provides that the leases or contracts, which said Harrison Naval Stores Company holds, authorizing it to operate upon pine timber for turpentine purposes similar to said Exhibit "A," are kept in the safe at the general office at Biloxi, but that said contracts, or papers, on which they are written do not at any time show what proportion of capital stock of the company is invested for their account of real and personal property, nor are such contracts any evidence of the value of the right of the company for operating on the lands therein described for turpentine purpose, as the value is to be determined in each instance by reference to the character of the timber, and the extent to which it has been worked as hereinafter stated. The leases referred to in the case of *Singer Manfacturing Co.* v. *Adams,* 165 Fed. 877, not analogous to turpentine leases.

The value of a lease for turpentine purposes as stipulated in this agreement, cannot be determined from an inspection of the paper at all. The true consideration for which a lease is made, like that of a deed of conveyance for a parcel of land may or may not be stated. At all events, if correctly stated at the time it is made, it does not show the value of the property which the turpentine operator owns thereunder any more than a consideration for one thousand dollars for a lot which was vacant at the time of the purchase, would show the value of the land after a twenty-thousand dollar building should be placed upon it. The value of these leases, and the value of the property

rights claimed by the appellee under them, depend upon a great variety of circumstances, such as are enumerated in this agreed state of facts as well as the market value of naval stores on the market from time to time.

The value of this property, or property right, which is assessable as personal property, as the court has held in the case of *Jones* v. *Adams, supra,* aside from the question of the market value of the naval stores products, varies with reference to at least half a dozen contingencies; that is, it varies with reference to the character of the land upon which the timber grows, as the facilities for extracting and removing the crude gum from timber, if desirably situated, is of course more valuable than timber upon lands that are undesirable. It varies with reference to the character of the pine upon the land, and with reference to the number of trees upon the lands, and the size of the trees, all of which must be determined by an inspection of the premises themselves, and all of these lands so leased lie wholly outside of the city of Biloxi. No reasonable, logical, or even sane distinction can be drawn between the right of a municipality to tax this appellee company for turpentine leases upon lands situated wholly outside of the city of Biloxi, upon the theory that in its office it has certain leases which are evidences of title, to the right to go upon these lands and make certain use of them, and the right of the city of Biloxi to tax this appellee for its numerous teams of mules which it owns at its six stills in the county, its six commissaries, or stores, which it owns at the stills, its six stills themselves which are mere appliances for extracting turpentine and rosin, and necessarily personal property, and its dozens of other kinds of visible tangible property situated at and around these stills, all of which is assessed on the personal Assessment Roll of the county, and for all of which it has papers in its office at Biloxi, which are evidences of the title to these various kinds of personal property.

If the contention of the Revenue Agent is correct in

this case, every possible species of personal property which any corporation in the state of Mississippi, either resident or nonresident may have in the state, regardless of where situated, would be liable for municipal taxes in the city or town in which it happened to have an office and in which were kept deeds, bills of sale, books, or other papers which would be evidences of title. If the Revenue Agent is correct in this case, every citizen of this state, who has the misfortune to live in a city or town, and who has a safe or box in that town in which he keeps deeds, tax receipts or muniments of title to his personal property situated in the remotest county of the state, would be liable in the municipality in which he lives, for taxes upon such personal property. Furthermore if the appellee in this case is liable for taxation upon these turpentine leases, which are evidences of title to its right to operate upon lands situated outside of the city of Biloxi, it can be lawful only upon one theory of the law, that is, that turpentine leases are of that species of property which fall in the maxim "*Mobilia sequuntur personam*," that is, it is of that character of property which is supposed to follow the person of the owner, and be ever with him regardless of actual facts. That maxim or fiction certainly could not be invoked with reference to a corporation, except at its domicile, and certainly could not be applied to a mere office, or place of business, of a foreign corporation regardless of the domicile.

This court in the case of *Adams* v. *Mortgage Co.,* 82 Miss. 401, quoting Blackstone and Story as authority, has expressly held, "That this fiction can only be invoked where convenience or justice requires it." Says the court in that case: "The fiction or maxim, '*Mobilia Personam Sequuntur,* is by no means universal application. Like other fictions, it has its special uses. It may be resorted to when convenience or justice so require. In other circumstances, the truth and not the fiction affords, as it plainly ought to afford, the rule of action. The proper use of legal fictions is to prevent injustice."

"No fiction," says Blackstone, "shall extend to work an injury; its proper operation being to prevent a mischief or remedy an inconvenience which might result from the general rule of law." So, Judge Story, referring to the *situs* of goods and chattels, observes. The general doctrine is not controverted, and although movables are for many purposes to be deemed to have no *situs,* except that of the domicile of the owner, yet, this being but a legal fiction, it yields whenever it is necessary, for the purpose of justice, that the actual *situs* of the thing should be examined.

He adds quite pertinently, I think, to the present question: "A nation within whose territory any personal property is actually situated has entire dominion over it while therein, in point of sovereignty and jurisdiction, as it has over immovable property situated there. I can think of no more just and appropriate exercise of the sovereignty and jurisdiction of a state or nation, over property, situated within it, and protected by its laws, than to compel it to contribute towards the maintenance of the government and law."

There is certainly nothing in the justice of this case that requires the court to resort to fictions of the law in order to give it authority to impose municipal taxes upon this appellee. It might be excusable if it is necessary to go to that extent, to invoke this fiction for the purpose of taxing these people for state and county taxes in the counties where these lands lie, on the theory that such leases are property of some character, and should be made to contribute its just share of the burdens of the government which protects it, such as the state and county has done with reference to this property. But lying wholly outside of the city of Biloxi, where the city makes no expenditure with reference to this property, and cannot under any circumstances be called upon to contribute towards its protection, and assumes no governmental burden of any character with reference to it, it certainly cannot be said that convenience or justice requires the court to hold that the right

to operate upon these. lands falls ·within, the category· of
·property which is supposed to follow the person of the
owner and to have a *situs* for administration in case of
.death, and for taxation at the place where its owner re-
sides.

There is a marked difference between what is known
as corporal personal property, such ·as live stock, lum-
ber, or other material, and intangible property, like
notes, bonds and other securities; and it is generally
recognized that tangible personal property has an ac-
tual *situs* at the place where it is located without res-
·pect to the domicile of the owner, whereas the *situs* of
intangible personal property, for the purpose of tax-
ation, depends altogether on legislative enactment, or ju-
dicial construction.

It does not always follow the beneficial owner; it
may be taxed at the place where the person resides who
has control and management of the securities; who loans
out the money, collects the insurance,  and  exercises
other acts of ownership and control thereto, and where
it may be said to be permanently located, as much as if
the actual owner resided where it was.  For many pur-
poses the domicile of the owner is deemed the *situs* of
his personal property, but this is only a fiction from
motives of convenience, and is not judicial in its appli-
cation, but yields to the actual *situs* of. the property
when justice requires that it should, and is not allowed
to· be a controlling feature in matters  of taxation.
*Commonwealth of Kentucky* v. *West  India  Oil  Re-
finery Co.*, 36 L. R. A. (N. S.). 30, and note and authori-
ties therein cited.

The assessment of property in municipalities is made
under section 3421 of the Code of 1906. · It provides as
follows: ''The municipal assessment of property for
taxation shall be made by the clerk or tax collector, by
copying from the county assessment rolls that portion
thereof which embraces property or persons within the
corporate limits; the copy may be made at any time

after the assessment rolls are approved, and all changes in the county assessment thereafter made shall likewise be made in the copy and the said copy shall be placed in the hands of the municipal tax collector, and be his warrant for the collection of municipal taxes. In all cases where persons or property have escaped taxation for a previous year, the clerk shall assess the same for taxation, and his assessment, when approved by the mayor and board of aldermen, on notice to the person assessed, shall be binding and conclusive, unless appealed from within five days after its approval. And the municipal authorities may provide for a separate assessment, to be made annually, of all taxable property."

The court will observe that this statute requires the municipal tax collector to copy from the county assessment rolls that portion thereof which embraces property or persons "within the corporate limits." In order to hold that these leases for turpentine purposes are property within the corporate limits of Biloxi, the court must hold that such leases belong to that species of intangible property which is presumed in law to follow the person of the owner, and under the maxim *"Mobilia sequuntur personam;"* that the property rights covered by, or embraced within these leases, were in the office of the Harrison Naval Stores Company in Biloxi. To hold that, the court would have to overlook and disregard the fact that every element that enters into consideration in determining the value of this property arises from an inspection of the lands covered by the leases, and is determinable from time to time from the actual condition in which the lands and timber exist, or from the acts of the owner in dealing with it, and moreover, that this properly is not tangible and susceptible of being seen, and changes in value, from time to time, with reference to actual physical conditions, but that it is intangible property, and that the paper upon which the leases are written are the property rights which is assessed. In addition to holding

that it is intangible property, the value of which is determinable from an inspection of the paper in the office of the company at Biloxi, the court in addition would have to invoke the maxim *"Mobilia sequuntur personam"* and hold that this species of tangible property had not followed the person of the owner to its domicile in Louisiana, where it would have a *situs* for taxation, if it is intangible, but to Biloxi where the company for convenience kept its papers and books. This maxim was invoked by the state of Kentucky in the case of *Commonwealth* v. *West India Refining Company, supra,* and that court refused to apply it in that case, and the same reasons apply with equal force here.

Cook, J., delivered the opinion of the court.

The only difference in this case and *Harrison Naval Stores Co.* v. *Adams, Revenue Agent,* 61 So. 417, is that this case seeks to recover municipal taxes for the city of Biloxi, while the other case sought to recover state and county taxes. The principal place of business of the corporation is the same here as there, to wit, Biloxi, Harrison county.

In *Harrison Naval Stores Co.* v. *Adams, Rev. Agt., supra,* it is held that the lease in question represented "money invested or employed in the turpentine business." The agent conducting the business of the corporation resides at the domicile or principal place of business of the company, and the lease representing the investment was in his custody and under his control. The investment represented by the lease was a proper subject of taxation, and it was within the territorial limits of the state. The main office of the company owning the property assessed was within the state, and the property was therefore taxable in the state. The corporation had a substantial right—a thing of value, an investment of money in a business carried on in this state—and this right, or investment, was represented by a lease which was kept by the agent of the owner at its place of business. It is by this lease that the investment is valued and may be enjoyed. The property to

be taxed must have a *situs* within the jurisdiction of the taxing power, before it is a proper subject of taxation; and it was upon this principle that we held the property involved in *Harrison Naval Stores Co.* v. *Adams, supra,* was taxable in this state.

In this case the business in which the money of the corporation was invested was located at Biloxi, and the evidence of the investment was kept at this place, the main office, where the business of the corporation was conducted.   The subjects of the business, or the things in which the money is invested, are outside of the city, but the business is within the city limits, and so also is the investment.   This is not a tax on real estate, or an interest in real estate; it is not a tax on the output of the business, or upon the machinery or other instrumentalities necessary to the conduct of the business; but it is a tax on the investment in the business being conducted from Biloxi.   In the former case the court discussed the character of the investment, and whether it was a tangible property liable to taxation.   The court necessarily assumed that the property was within the state.   It had to be in the state before the state could list it for taxation.

We did not hold in *Harrison Naval Stores Co.* v. *Adams, supra,* that the property was assessable in this state because the trees from which the turpentine was to be extracted, under the lease, were growing upon land situated in the state.   We did necessarily  hold  that aside from the tax on real estate, and aside from the tax on the machinery, ways, means, and appliances used in the prosecution of the business, there was an additional property  represented  by an  investment of money in a turpentine lease.   If the decision in that case is sound, it follows that this property for the same reasons is assessable for city taxes.   It has its *situs* in the state and in the city of Biloxi.

In *Redmond* v. *Commissioners,* 87 N. C. 122, 123, the court said:

JOHNSON *v*. NAVAL STORES Co.    [Sup. Ct.

Opinion of the court.                    [108 Miss.

"The plaintiffs are domiciled in the state of New York, but were owners of lands lying in several of the counties of this state, which had been sold by their agent, who keeps an office in the town of Rutherfordton, in this state, and had power to sell and execute covenants for title and to collect the money . . . . These covenants for the purchase money amount to many thousands of dollars, and are all kept in the office of said agent at Rutherfordton; and the single question presented in the record is whether they are liable to a state, county, and corporation tax. :.... The debts due to the plaintiffs upon their land contracts are personal estate, the same as if they were due upon notes or bonds; and, so far as they have any substantial existence, they are in this state and not elsewhere. Their validity and protection, and the remedies for their enforcement, all depend upon the laws of this state, and in neither respect (or in any other that we can now think of) do they take any benefit from the laws of the plaintiffs' domicile. It is but just, therefore, that they should contribute towards the support of the only government which affords them protection, and help to defray the expensees incurred in so doing. The actual *situs* and control of the property within this state and the fact that it enjoys the protection of the laws here, are conditions which subject it to taxation here; and the legal fiction, which is sometimes for other purposes indulged, that it is deemed to follow the person of the owner, and to be present at the place of his domicile, has no application. In such case, the maxim, '*Mobilia personam sequuntur*,' gives way to the other maxim, '*in fictione juris semper aequitas existat*.' "

That case, we think, illustrates the principle controlling this case, and the facts are of the same general character of the facts of this case.

*Reversed and remanded.*

SMITH, C. J., expressed no opinion.